**NOT FOR PUBLICATION**                                                          **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                          :
CARMEN DE LA CRUZ,                        :
                                          :    Hon. Faith S. Hochberg
                    Plaintiff,            :
                                          :    Civil Action No. 10-4458 (FSH)
                                          :
            v.                            :    **OPINION & ORDER**
                                          :
MICHAEL J. ASTRUE,                        :    Dated: August 10, 2011
COMMISSIONER OF SOCIAL SECURITY,          :
                                          :
                    Defendant.            :
_____:

**HOCHBERG, District Judge:**

       This matter comes before the Court upon Plaintiff Carmen De La Cruz's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g).  The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**BACKGROUND**

I.     PLAINTIFF'S MEDICAL AND VOCATIONAL HISTORY

       Plaintiff is a 48-year-old female with a high school education.  (Tr. 41)  She was born in the Dominican Republic and is a United States citizen.  (Tr. 42, 52)  She can understand spoken English, but her ability to communicate in English is limited.  (Tr. 51)  She is single and has a 23-year-old daughter who lives in Boston, Massachusetts.  (Tr. 41)  Plaintiff lives with her older sister in West New York, New Jersey.  (Tr. 41)  Plaintiff alleges that she suffers from chronic

back and neck pain, depression and headaches. (Tr. 43-49)

Plaintiff worked as a soldering technician and assembly worker for an electronics business from May 1997 to March 2000. (Tr. 42) This work included lifting units of 10 lbs. frequently. (Tr. 150) From August 2002 to June 2007, Plaintiff worked as a home health aide for Care Finders, Inc., assisting elderly sick patients with day-to-day needs such as eating, bathing, walking, getting out of bed into a sitting position, light cooking, cleaning, and taking patients to doctor appointments, errands and grocery shopping. (Tr. 131, 148) Plaintiff frequently lifted 25 lbs. during the workday. (Tr. 149)

Plaintiff has been out of work since June 27, 2007. (Tr. 130) She claims that she was unable to continue working because of the severity of her pain. (Tr. 131)

In a typical day, Plaintiff gets up around 10:00 a.m. (Tr. 50) She bathes, brushes her teeth, eats breakfast, sits for a while, stands, and then sits or lies down until she goes to bed. (Tr. 50, 140) She is able to prepare her own meals, but she states that she mostly eats sandwiches and frozen dinners because she cannot stand for very long. (Tr. 142) Plaintiff claims that she is unable to do routine household chores without the assistance of pain medication. *Id.* Although she claims to only go outside approximately twice a year, Plaintiff is able to drive a car alone. (Tr. 142-43) Plaintiff can pay bills, handle a savings, count change, and use a checkbook and money order; however, her sister does the shopping. (Tr. 143)

Plaintiff's hobbies include watching TV a few times a week, but she is no longer able to sew. *Id.* She has a book, but she hardly ever reads it because she doesn't "feel like doing anything." (Tr. 50) She spends time with her family about once a week. (Tr. 144) Plaintiff can pay attention for a long time, finish what she starts and follow written and spoken instructions

2

well.  (Tr. 145) She gets along well with authority figures and handles stress and changes in routine "okay."  (Tr. 146)

Plaintiff experiences pain in her neck, back and arms.  (Tr. 43-44)  These conditions cause her depression and headaches.  (Tr. 40, 48)  Plaintiff can walk only one block before needing to stop and rest, and she must rest for at least 20 to 30 minutes.  *Id.*  Plaintiff cannot be sitting, lying down or standing very long, which makes her feel "impotent."  (Tr. 48)  At most, she can sit in one place without a problem for 45 minutes.  *Id.*

    A.    <u>Plaintiff's Treatment for Back and Neck Pain</u>

Dr. Felix Roque, Director of the Pain Relief Center at St. Mary's Hospital, has treated Plaintiff since April 1, 2003, seeing her on a monthly basis.  (Tr. 238)   In 2000, Plaintiff claims that she fell and injured her back.  (Tr. 198)  Plaintiff has had physical therapy and epidural steroid injections for pain relief.  *Id.*  From February 1, 2006 to June 28, 2007, Plaintiff underwent five MRIs of her spine for back pain.  (Tr. 250-52)   Each MRI performed by Dr. Roque revealed degenerative disc changes and herniated discs.  *Id.*

On July 26, 2007, Plaintiff was admitted to St. Mary's Hospital for back pain and left-sided leg, thigh and calf radiating pain. (Tr. 193)  The admitting diagnosis was lumbar radiculopathy. (Tr. 193)  Dr. Roque performed three procedures during surgery to determine the cause of Plaintiff's pain and to ease her pain. (Tr. 195-96)  Plaintiff's pain was graded zero out of ten after the surgery, down from eight out of ten prior to the surgery.  *Id.*   She was also able to move the lower extremities without any muscular or neurological deficits after the surgery. (Tr. 196)  Plaintiff was advised to resume taking her regular medications, including Percocet.  *Id.*

On December 12, 2007, Dr. Roque performed another MRI on Plaintiff's spine, finding

posterior herniations with mild to moderate canal stenosis. (Tr. 246) There was no evidence of fracture or ligamentous injury. *Id.*

Plaintiff's condition has been stable since January 2007. Dr. Roque concluded, based on his medical findings, that Plaintiff is functionally limited to the following: sitting less than 6 hours per day; standing or walking less than 2 hours per day; lifting or carrying only less than 5 lbs. occasionally; and limited push and pull. (Tr. 239)

      B.     Plaintiff's Treatment for Headaches

On March 24, 2008, Plaintiff was admitted to the Emergency Room at Palisades Medical Center for headache and neck pain. (Tr. 206) She complained that her headache had begun three days prior to her hospital visit. (Tr. 208) Plaintiff described the pain as throbbing and generalized, stating that her head felt too heavy for her neck and shoulders. *Id.* She denied fever, chills, photophobias, stiff neck, head trauma, nausea, vomiting, dizziness, ataxia, or weakness/paresthesias. *Id.* Plaintiff noted that she had had prior headaches, but this headache was not relieved by Percocet. *Id.* With additional medication, the headache was completely resolved, and Plaintiff was prescribed Motrin on an ongoing basis. *Id.*

Plaintiff returned to the Emergency Room with a headache on September 5, 2008. (Tr. 255, 257) Plaintiff denied nausea, vomiting, stiff neck, photophobia, and head trauma. *Id.* Plaintiff's headache responded to medication. *Id.* On the same day, Plaintiff underwent a CT head scan. (Tr. 264) The results were negative, showing no evidence of mass lesion, hemorrhage or territorial infarct. *Id.*

      C.     Plaintiff's Psychiatric Treatment

In 2008, Plaintiff commenced psychiatric treatment under the care of Dr. Zipproa Razin.

(Tr. 271)  She presented with depressed mood and suicidal ideation, though she had no history of suicidal tendencies, nor had she made any plan or taken any steps toward taking her own life. (Tr. 278)  Plaintiff complained of weight gain and trouble falling and staying asleep.  *Id.*  Plaintiff discussed her anxiety and worry about her ill daughter in Boston.  (Tr. 275) She also reported feeling very depressed and agitated due to a conflict with a welfare worker and the loss of her benefits.  *Id.*  She learned relaxation techniques to help her better manage her chronic pain and stress, and Dr. Razin increased her medication.  (Tr. 272)   At Plaintiff's subsequent visit, she reported feeling better as a result of her medication and relaxation techniques.  *Id.*  Dr. Razin assessed Plaintiff's appearance, attitude, alertness, observation, behavior, speech, thought processes, judgment, and insight as normal or otherwise unremarkable.  (Tr. 281)  Dr. Razin recommended medication monitoring and psychotherapy.  (Tr. 282)

   D. <u>Residual Functional Capacity assessments</u>

  Dr. Alan Friedman performed a consultative medical examination on January 10, 2011. (Tr. 198-201) Plaintiff was able to ascend and descend the examination table independently and had a normal gait pattern and normal fine and gross motor coordination.  *Id*.  She displayed a full range of motion in her arms, legs and cervical and lumbar spine.  *Id*.  Dr. Friedman also reviewed MRI scans of Plaintiff's spine from February and November 2006 and January and June 2007. *Id*.  Dr. Friedman noted that his examination of Plaintiff was "limited" because of her "poor" cooperation and participation.  (Tr. 199)

  Dr. Joseph S. Udomsaph, a state-agency review physician, reviewed plaintiff's medical records and completed an RFC assessment on March 25, 2008. (Tr. 217-24)  The assessment determined that Plaintiff can occasionally lift from 0 to 20 lbs. but can frequently lift no more

5

than 10 lbs. (Tr. 218) Plaintiff can stand or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. *Id.* Dr. Udomsaph found that Plaintiff can occasionally climb stairs or ramps, but can never climb ladders, ropes or scaffolds. (Tr. 219) She can also occasionally balance, stoop, kneel, crouch, or crawl. *Id.* Dr. Udomsaph found no manipulative limitations, visual limitations, communicative limitations, or environmental limitations. (Tr. 220-21) He found that the "symptom of thoracolumbar disc pain syndrome post-MVA is subjectively credible and attributable to her MDI.." (Tr. 222) Dr. Udomsaph further noted that the "severity of the symptom is disproportionate; however, its effect on function is partially consistent with the medical and non-medical evidence in file." *Id.*

    E.    <u>Testimonial Evidence</u>

An administrative hearing was held before Administrative Law Judge Donna A. Krappa (the "ALJ") on July 13, 2009. Plaintiff testified that she has not worked since 2007. (Tr. 43) Plaintiff testified to having regular pain in her neck, back, whole head and right arm. (Tr. 44) She does not think she could perform her last job, or even the simplest job, because she "can't be sitting for very long" and "can't be lying down very long or standing very long." (Tr. 48) Plaintiff testified that she could sit for 45 minutes at most. (Tr. 47) She further testified that the her pain in her right arm would affect her ability to do an electronics assembly job because she had to put in a lot of screws, and she had to lift heavy pieces. (Tr. 45) Plaintiff testified that she is able to use her left arm for some things. (Tr. 46) However, she further testified that she cannot write with her left hand, and she has difficulty using her left hand since she has never used it before. (Tr. 53-54) She told the ALJ that she is depressed now because she "used to be able to do everything and now can't do anything." (Tr. 47)

6

Plaintiff told the ALJ that she lays down a lot due to her headaches. (Tr. 48) Plaintiff needs help from her sister to perform household chores such as cooking and cleaning. (Tr. 49) She has problems showering, dressing and combing her hair. *Id.* Plaintiff is able to drive, and often drives to her appointments. (Tr. 52) She also testified that she has trouble concentrating which makes her unable to read. *Id.*

The ALJ then questioned Rockland Meola, a vocational expert. (Tr. 55) The ALJ asked Mr. Meola to assess the job prospects of an individual of the claimant's age, education, and work history, restricted to jobs with light work and no lifting with the right arm. (Tr. 56) Mr. Meola determined that such an individual could not perform Plaintiff's past relevant work of a soldering technician or homemaker. *Id*. Mr. Meola testified that such an individual could, however, be an inspector, sorter, sealing machine operator, or labeler. (Tr. 57)

Mr. Meola was then asked to assume a second hypothetical with additional constraints - that the best the person could perform was sedentary work, lifting ten pounds frequently, more than ten pounds occasionally and sitting for six hours during the day with a three to five minute stretch break each hour. (Tr. 57) The ALJ asked Mr. Meola to further assume the individual could do no more than two hours standing or walking total with unlimited pushing and pulling. *Id.* Mr. Meola opined that such an individual could be a carding machine operator, hand mounter, or prep worker. *Id.* These jobs do not require an ability to speak or write English and are unskilled. (Tr. 58)

Asked to assume a third hypothetical with another additional constraint - that the individual in question can only handle gross manipulation with the left hand occasionally, with no manipulation by the right hand. *Id.* Mr. Meola opined that the person would be so severely

7

impacted they would not be able to do unskilled, sedentary, or light work.  (Tr. 58-59)

Mr. Meola further testified that a person, whose concentration is affected during the work day, and even with breaks during unskilled work, would not be able to do the work at both light or sedentary level.  (Tr. 59)  Mr. Meola also testified that a person would not be able to maintain employment if because of pain and depression, the person misses two days of work per month. *Id.*  Finally, upon cross examination by Plaintiff's attorney, Mr. Meola testified that there would be no work that a person could do if the person couldn't use the right upper extremity.  (Tr. 61, 63)

II.     THE DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is considered disabled under the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2006).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3) (2006).

An individual will be deemed disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A) (2006).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis:

Step One: Substantial Gainful Activity.  The Commissioner first considers whether the claimant is presently employed and whether that employment constitutes substantial gainful activity.[1]  If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of his medical condition.  20 C.F.R. § 416.920(b) (2010).

Step Two: Severe Impairment.  If the claimant is not engaged in substantial gainful activity, he must then demonstrate that he suffers from a severe impairment or combination of impairments considered severe.  A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities."  If the claimant does not demonstrate a severe impairment, he will be found not disabled.  20 C.F.R. § 416.920(c) (2010).

Step Three: Listed Impairment.  If the claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. § 404, subpt. P, app. 1 (2010).  If the claimant has such an impairment, he is found disabled.  If not, the Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d) (2010).

Step Four: Residual Functional Capacity.  At step four, the Commissioner determines whether, despite his impairment, the claimant retains the RFC to perform his past relevant work.  If so, the claimant is found not disabled and the inquiry proceeds no further.  If not, the

---

[1] "Substantial" work involves significant physical and mental activities.  "Gainful" work is performed for pay or profit.  20 C.F.R. § 416.972 (2010).

Commissioner proceeds to the fifth step.  20 C.F.R. § 416.920(e)-(f) (2010).

Step Five: Other Work.  If the claimant is unable to perform his past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if he is able to make an adjustment to other work.  If he cannot do so, the claimant is found disabled.  20 C.F.R. § 416.920(g) (2010).

This five-step analysis involves shifting burdens of proof.  *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion through the first four steps.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform other work available in the national economy.  *Id.*

Applying this five-step analysis, and upon review of the entire record, the ALJ first found that Plaintiff had not engaged in any substantial gainful activity since June 27, 2007.  (Tr. 26)  At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: disorders of the back and neck and depression.  *Id.*  At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the listed impairments in 20 C.F.R.§ 404, subpt. P, app. 1.  *Id.*

At step four, the ALJ determined that the Plaintiff has the RFC to perform the exertional demands of light work as defined in the Regulations.  (Tr. 27)  Specifically, Plaintiff is able to lift and/or carry 10 lbs. frequently and 20 lbs. occasionally; perform frequent gross manipulation with either hand; perform unlimited pushing and pulling within the weight restriction; sit for a total of 6 hours; and stand or walk for a total of 6 hours.  *Id.*

The ALJ further determined that Plaintiff is able to perform jobs that permit three breaks during the work day, each of which is at least 15 minutes duration; that require no climbing of

ladders, ropes or scaffolds; that require only occasional climbing of stairs and ramps; that require only occasional balancing, stooping, kneeling, crouching, and/or crawling; that require no exposure to unprotected heights, hazards or dangerous machinery; that do not involve exposure to temperature extreme; that involve no lifting with the right arm of greater than 45 degrees; that involve no quick movements with the neck and no rotation of the neck side to side greater than 45 degrees; that do not require more than occasional fine manipulation with the right hand; that are simple, unskilled and repetitive; that are low stress; and that require no operation of foot controls with either foot. (Tr. 27)  On this basis, the ALJ found that Plaintiff is unable to perform any of her past relevant work. (Tr. 30)

At step five, the ALJ relied on the testimony of a vocational expert to find that, given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 30)  Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act and denied her application for benefits. (Tr. 31)

## DISCUSSION

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record to support her decision. 42 U.S.C.A. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record.  Simmonds v. Hecker, 807 F.2d 54, 58 (3d Cir. 1986).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and seeks to have this action remanded to the Social Security Administration. Specifically, Plaintiff argues that (1) the ALJ failed to assess the severity of all Plaintiff's combined impairments at step two of the sequential evaluation; (2) the ALJ rejected the opinion of the treating physician, without considering his submission as a whole; and (3) the ALJ erred at step five of the sequential evaluation insofar as (a) the RFC finding is inconsistent with the limitations the ALJ previously identified, (b) the ALJ's hypothetical questions to the vocational expert did not recite all of Plaintiff's impairments, and (c) the vocational expert's testimony is based upon general job classifications. The Court will address each argument in turn.

I.   ASSESSMENT OF PLAINTIFF'S COMBINED IMPAIRMENTS AT STEP TWO

At step two of the sequential evaluation, the ALJ determined that Plaintiff's back and neck pain and depression are severe impairments. Plaintiff argues that the ALJ did not adequately consider the limiting affects of her continued and persistent headaches.

In evaluating medically determinable impairments and the extent to which they limit one's capacity to work, the Commissioner is required to consider "all reasonable evidence...including statements from [the claimant]." 20 C.F.R. §§ 416.927(c), 404.1529(c). In addition, the Commissioner must consider the claimant's history, laboratory findings, statements from treating and non-treating sources, and treating and non-treating medical opinions. *Id.*

Subjective complaints of pain or symptoms must be substantiated by medical evidence. 42 U.S.C. § 423(d)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). It is the Plaintiff's burden to establish that his alleged symptoms are substantiated by the evidence in the record. *Pearson v. Barnhart*, 380 F. Supp. 2d 496, 508 (D.N.J. 2005).

Here, the record supports the ALJ's conclusion that Plaintiff's headaches do not represent

a severe impairment pursuant to 20 C.F.R. § 404.1520(c). The only objective medical evidence that substantiates Plaintiff's subjective complaints about headaches are the records from her two 2008 Emergency Room visits. (Tr. 208, 257) In describing her headaches on these occasions, Plaintiff mentioned that she some sometimes had headaches and indicated that the headaches from which she was suffering at the time had gone on for some time. *Id.* She did not, however, state that her headaches were constant, or even consistent, nor did she describe disabling symptoms. Indeed, Plaintiff denied suffering from fever, chills, photophobias, stiff neck, head trauma, nausea, vomiting, dizziness, ataxia, weakness/paresthesias, or head trauma. *Id.* Plaintiff also responded to pain medication on both hospital visits and was able to leave the hospital shortly after receiving medication, fully relieved. *Id.* A computerized tomography (CT) scan of Plaintiff's head on September 5, 2008 was negative for signs of more serious conditions that might trigger headaches. (Tr. 264). In contesting the ALJ's findings, Plaintiff relies solely on her own subjective complaints, primarily focusing on Plaintiff's testimony at the hearing before the ALJ and her statement in a 2007 questionnaire that she had been experiencing headaches for seven years, (Tr. 156). Without objective medical evidence supporting Plaintiff's claims about the severity of her headaches, the ALJ's determination that those headaches did not meet the standards for a severe impairment is supported by substantial evidence.

II.     THE OPINION OF THE TREATING PHYSICIAN

In assessing Plaintiff's RFC, the ALJ considered the opinion of Plaintiff's treating physician, Dr. Roque, that Plaintiff could perform less than sedentary work and rejected it. (Tr. 29) The ALJ found that Dr. Roque's "findings are conclusory and not supported by either the diagnostic or the clinical evidence. Moreover[,] the extent of disability alleged is credibly challenged by the January 2008 consultative examination." *Id*. Plaintiff argues that the ALJ

13

failed to consider Dr. Roque's submission in its entirety, particularly neglecting extensive examination notes and MRI and EMG reports.

The ALJ weighs medical opinions according to the guidelines in 20 C.F.R §§ 404.1527 and 416.927(d). Several factors are relevant to an ALJ's evaluation of the opinions of a treating physician, including (1) the relationship between the doctor and the claimant, (2) the supportability of the doctor's opinion, (3) its consistency, (4) any specialization of the doctor, and (5) any other factors the court chooses. 20 C.F.R. § 416.927(d). A treating physician's opinion will be given controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2).

Any statement by a medical doctor that a claimant is "disabled" or "unable to work" is not determinative in the Commissioner's finding. 20 C.F.R. § 404.1527(e)(1). These determinations are "reserved to the Commissioner...because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *Johnson v. Commissioner*, 529 F.3d 198, 203 n.2 (3d Cir. 2008).

Dr. Friedman, the consultative medical examiner, found that Plaintiff's fine and gross motor coordination was normal, that she could pick up a pin from the table with either hand, that she had a full range of motion in the cervical and lumbar spines as well as bilaterally in the upper and lower extremities and that her joints were "without erythema, effusions, warmth, dislocation or deformities." (Tr. 199) The state agency review physician, Dr. Udomsaph, opined based on Plaintiff's medical records that Plaintiff could walk, stand, and sit for 6 hours in an 8 hour workday. (Tr. 218) Dr. Udomsaph further reported that Plaintiff could lift 20 lbs. occasionally and 10 lbs. frequently. (Tr. 49) In light of this substantial evidence, the ALJ had a proper basis

upon which to limit the weight accorded to the findings of Plaintiff's treating physicians.

Plaintiff argues, without support in the record, that the differences in Dr. Friedman's and Dr. Roque's conclusions are the result of seeing Plaintiff on different days. She also contends that Dr. Roque's reliance on objective MRI and EMG scans lends weight to his conclusions. While the scans denote some issues at the time they were taken, the record does not support the conclusion that these issues prevent Plaintiff from a full range of motion or limit her to sedentary work on an ongoing basis. Indeed, Dr. Friedman reviewed the very scan results on which Plaintiff relies in conducting his examination.

III.   PLAINTIFF'S RFC AND ABILITY TO DO OTHER WORK

At step five of the sequential evaluation, the ALJ relied on the testimony of a vocational expert to find that, given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 30)

A.   Plaintiff's RFC

In determining whether a claimant is disabled, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(e). In making this determination, the ALJ will consider all relevant medical evidence, as well as all impairments. Here, the ALJ determined that Plaintiff has the capacity to perform light work, including lifting and carrying up to 20 lbs. occasionally and 10 lbs. frequently, standing or walking up to 6 hours in an 8 hour workday, and sitting up to 6 hours in an 8 hour workday. (Tr. 27) Further, Plaintiff is able to perform jobs that involve no lifting with the right arm of greater than 45 degrees; that involve no quick movements with the neck and no rotation of the neck side to side greater than 45 degrees; that do not require more than occasional fine manipulation with the right hand, although the left hand is available as a "helper" in this regard. Id. The ALJ concluded that Plaintiff is limited to jobs that are simple, unskilled

15

and repetitive, and that are low stress. *Id*.

Plaintiff argues that the ALJ's finding that Plaintiff could not lift her dominant arm more than 45 degrees is inconsistent with Plaintiff's RFC including a variety of lifting, carrying, pushing and pulling. However, Plaintiff does not point to anything in the record beyond Plaintiff's own subjective complaints that indicates that her limited right arm motion would prevent her from some lifting, carrying, pushing and pulling. The ALJ's RFC finding incorporates a number of limitations and accepts the findings of Dr. Udomsaph and Dr. Friedman, as well as the realities of Plaintiff's daily life, in which she engages in daily activities such as cooking and driving alone, which requires the use of both arms. To the extent Plaintiff's subjective complaints are inconsistent with the ALJ's RFC finding – for example, her complaint that she would be unable to grasp items since her index and middle fingers cramp and swell, despite Dr. Friedman's observation that she could pick up a pin from a table – the ALJ was well within his "discretion 'to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant.'" *See La Corte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citation omitted).

B.   Hypothetical Questions to the Vocational Expert

Plaintiff argues that the ALJ's hypothetical questions to the vocational expert did not recite all of Plaintiff's impairments, specifically her headaches. As set forth above, the ALJ concluded, based on substantial evidence in the record, that Plaintiff's headaches do not constitute a severe impairment. Accordingly, the ALJ's questions to the vocational expert were proper. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).

C.   Vocational Expert Testimony Based on General Job Classifications

At step five, the ALJ considers the individual's RFC, age, education, and past work experience to determine if he is able to make an adjustment to other work. If he cannot do so, the claimant is found disabled. 20 C.F.R. § 416.920(g) (2010).

Here, the ALJ considered the Medical-Vocational Guidelines, which suggest that a claimant with the capacity to perform the full range of light work is, necessarily, not disabled. (Tr. 31) However, because the ALJ found that Plaintiff faced additional limitations, she also posed a series of questions to Mr. Meola, the vocational expert, who testified that Plaintiff would be capable of performing the jobs of inspector, sorter, sealing machine operator and labeler. Mr. Meola further testified that these jobs are available in significant numbers in the regional and national economies and could be taught to workers who did not speak English. (Tr. 31) Based on this substantial evidence, the ALJ concluded that Plaintiff is capable of finding work that exists in significant numbers in the national economy. *Id*.

Plaintiff contends that the job categories of "inspector, sorter, sealing machine operator and labeler" are too general to be meaningful and argues that Mr. Meola "clearly did not expect us to believe that Ms. De La Cruz could perform all jobs in these named categories...." (Pltf. Br. at 29) However, Plaintiff sets forth only two specific examples of jobs she questions whether she could perform, and she does not address all of the jobs that the ALJ found she could perform.

Plaintiff has failed to set forth any case law requiring the vocational expert, or the ALJ, to make findings as to specific types of jobs within the categories of "inspector, sorter, sealing machine operator and labeler" that Plaintiff would be able to perform.[2] The ALJ considered the

---

[2] The cases to which Plaintiff cites are inapposite. In *Allen v. Barnhart*, 417 F.3d 396 (3d Cir. 2005), the ALJ did not consider the testimony of a vocational expert at all, relying solely on a Social Security Ruling. *Id*. at 402-03. In *Burns v. Barnhart*, 312 F.3d 113 (3d Cir. 2002), the issue before the court was whether the vocational expert's testimony was consistent with the

17

substantial evidence in the record – including the Medical-Vocational Guidelines, which were consistent with the testimony of the vocational expert – in reaching her conclusion that Plaintiff could perform work in the national economy.

## CONCLUSION

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff is not disabled is based on substantial evidence. Accordingly, this Court **AFFIRMS** the Commissioner's decision to deny Plaintiff Social Security benefits.

Therefore, **IT IS** on this 10th day of August, 2011, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.

---

Medical-Vocational Guidelines. Id. at 128. Here, the ALJ specifically analyzed both, finding them consistent and basing her ultimate conclusion on the intersection of the Guidelines and Mr. Meola's testimony.